**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**HENRY EPPS,**

                           **Plaintiff,**

   vs.                                                 **1:10-CV-1101
                                                             (MAD/CFH)**

**THE CITY OF SCHENECTADY, JOHN DOE,
individually and in his capacity as an employee
of The City of Schenectady, New York Police
Department,**

                           **Defendants.**
_____

**APPEARANCES:**                                   **OF COUNSEL:**

HENRY EPPS
4 Columbia Street
Apt. 4
Schenectady, New York 12308
*Plaintiff Pro Se*

BAILEY, KELLEHER & JOHNSON, P.C.      William C. Firth, Esq.
Pine West Plaza 5, Suite 507                   Nannette R. Kelleher, Esq.
Washington Avenue Extension
Albany, New York 12205
*Attorneys for Defendants*

**Mae A. D'Agostino, U.S. District Judge:**

# MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

     Plaintiff commenced the within action pursuant to 42 U.S.C. § 1983 claiming that defendants The City of Schenectady and John Doe ("defendants") violated his constitutional rights on November 6, 2009. In addition, plaintiff asserted state law causes of action for battery

and negligence.[1]  When the action was commenced, plaintiff was represented by counsel.  On February 23, 2012, Magistrate Judge Homer relieved Grasso & Breedlove as attorneys of record.  Plaintiff is now proceeding *pro se*.  Presently before the Court is defendants' motion summary judgment and dismissal of plaintiff's complaint pursuant to Fed. R. Civ. P. 56. (Dkt. No. 19).

## BACKGROUND[2]

On November 6, 2009, at approximately 2:00 p.m., plaintiff consumed a few alcoholic beverages at his home.  Sometime between 3:00 p.m. and 4:00 p.m., plaintiff walked, less than a half mile, to an apartment at 824 Grant Avenue to visit with a friend, Francine Holiday.  When plaintiff arrived at the apartment, Ms. Holiday indicated that she needed food.  Plaintiff walked back to his home to retrieve some food, then to a store to purchase beverages.  Plaintiff returned to Ms. Holiday's apartment.  Plaintiff remained at the apartment for approximately twenty minutes.  Ms. Holiday then attempted to leave the apartment but plaintiff refused to allow her to leave.  Ms. Holiday "pushed" past plaintiff to leave and ran down the street yelling that she intended to contact the police.  Plaintiff left Ms. Holiday's apartment and returned home.  Shortly after arriving at his home, two police officers appeared at plaintiff's residence and placed plaintiff under arrest.  One officer displayed a badge numbered "128" and during plaintiff's deposition, he identified the police officer as Officer Schonewald.[3]  The officers told plaintiff he was being arrested for harassment.  The officers handcuffed plaintiff, behind his back, and placed him in a police cruiser and transported plaintiff to the police station for processing.

---

[1] This action was originally commenced in New York State Supreme Court, County of Schenectady. On September 16, 2010, defendants removed the action based on 28 U.S.C. § 1331 and 42 U.S.C. § 1983. (Dkt. No. 1).

[2] The facts set forth in this section are taken from: (1) the Complaint; (2) the Answer; (3) defendants' Statement of Material Facts; and (4) the exhibits and evidence submitted by defendants in support of the Motion for Summary Judgment. The facts, as discussed herein, are for the relevant time period as referenced in the complaint.

[3] Plaintiff has not identified the second police officer.

2

At approximately 5:00 p.m., plaintiff arrived at the police station and was escorted to the booking area. The handcuffs were removed and plaintiff was asked to remove his shoes and strings from his sweatpants. Plaintiff was asked a series of questions by the booking officer. There is a factual dispute with regard to what happened when plaintiff was asked to leave the booking area. Plaintiff claims that "just prior to leaving the booking area", Officer Schonewald reapplied the handcuffs behind his back. Plaintiff alleges that Officer Schonewald became "boisterous" and belligerent and began cursing at plaintiff. Plaintiff alleges that Officer Schonewald "yanked the handcuff chains" and "pushed" him while still in the booking area. Plaintiff did not fall or come into contact with any objects.

Defendants contend that after questioning was complete, Officer Chris Haigh, stated, "Henry, let's go" but plaintiff refused to comply with Officer Haigh's verbal commands to accompany him out of the booking area. Officer Schonewald overheard the exchange. Upon receiving no response to his third request, defendants claim that the officer then placed a hand on each of plaintiff's sides (above his waist) to escort plaintiff from the booking area. Defendants claim that handcuffs were not reapplied while plaintiff was in the booking area.[4]

Later that day, plaintiff was arraigned at the police station and then transported to the Schenectady County Correctional Facility. Plaintiff was sentenced to thirty days of incarceration. During his incarceration, plaintiff experienced pain in his hand but did not request or receive medical attention. On or about November 24, 2009, after serving twenty days, plaintiff was released. The next day, plaintiff claims that he sought medical attention at Ellis Hospital for an injury to his right hand/wrist. Plaintiff had three subsequent visits at Schenectady Regional Orthopedic Associates, P.C.

---

[4] Defendants allege that video footage annexed to the motion for summary judgment supports their version of the events. The video footage is discussed *infra.*

On August 28, 2012, defendants filed the within motion seeking summary judgment and dismissal of plaintiff's complaint. Defendants claim that: (1) plaintiff's § 1983 claim for excessive force and state law battery claim must be dismissed because the force used and injury sustained were *de minimis*; (2) all claims against John Doe must be dismissed due to plaintiff's failure to identify and serve said defendant; (3) plaintiff's § 1983 claim against the City fails to state a cause of action; (4) plaintiff's negligence is subject to dismissal because it is based upon intentional conduct; and (5) all causes of action against all defendants must be dismissed based upon video evidence. (Dkt. No. 19).

## DISCUSSION

**I. Standard on Motion for Summary Judgment**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 258 (1986). A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. See id. If the nonmovant fails to carry this burden, summary judgment is appropriate. *See id.* "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Niagara Mohawk Power Corp. v. Hudson River–Black River Regulating Dist.*, 673 F.3d 84, 94 (2d Cir.2012).

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir.1994). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir.1996) (citing Fed.R.Civ.P. 56( c). In applying this standard, the court should not weigh evidence or assess the credibility of witnesses. *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.1996) (citation omitted). These determinations are within the sole province of the jury. *Id*.

In reviewing a *pro se* case, the court "must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F.Supp.2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 303 U.S. 519, 520 (1972)) (other citations omitted). "Indeed, the Second Circuit has stated that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.' " *Id*. (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). This does not mean, however, that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *See id.* (citing *Showers v. Eastmond*, 2001 WL 527484, *2 (S.D.N.Y. 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not

5

sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F.Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991)).

Here, defendants properly filed a Statement of Material Facts pursuant to Local Rule 7.1. Local Rule 7.1(a)(3) states:

> The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

Local Rule 7. 1(a)(3) (emphasis in original). Plaintiff has failed to properly respond to defendants' Statement of Material Facts, thus, the Statement will be accepted as true to the extent that the facts are supported by evidence in the record. *See Orraca v. Pilatich*, 2008 WL 4443274, at \*3 (N.D.N.Y. 2008); *see also N.Y. Teamsters Conf. Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648–49 (2d Cir. 2005) (the Court deemed the properly supported allegations in the defendant's L.R. 7.1 Statement admitted for the purposes of the motion).

## II. *De Minimis*

Defendants argue that, assuming that the incident occurred as plaintiff described, the application of force was "so extraordinarily minimal" that it did not rise to the level of force necessary to constitute excessive force under the Fourth Amendment or battery under New York State Law.[5]

---

[5] While plaintiff does not articulate the basis for his excessive force claim, defendants correctly note that the Fourth Amendment controls. *See Bonilla v. Jaronczyk* , 354 F. App'x 579, 581 (2d Cir. 2009) (claims of excessive force "in the course of an arrest" should be analyzed under the Fourth Amendment).

6

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). To succeed on a Fourth Amendment excessive force claim, a plaintiff must show the amount of force used was objectively unreasonable. *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir.1996) ("In determining whether the force used by a police officer was reasonable, the court must . . . consider the perspective of the officer at the time of the arrest, taking into account the fact that the officer may have been required to make a split-second decision"); *see also Rodriguez v. Vill. of Ossining,* 2013 WL 154334, at *4 (S.D.N.Y. 2013) (citations omitted) (on an excessive force claim, a plaintiff must present sufficient evidence to establish that the alleged use of force is objectively sufficiently serious or harmful enough to be actionable).

"[N]ot every push or shove, [. . . ]violates the Fourth Amendment, and several courts in this Circuit have required plaintiffs to allege more than a *de minimis* use of force to succeed on their excessive force claims." *LaFrance v. Bemben*, 2013 WL 132702, at *3 -4 (E.D.N.Y. 2013) (citation omitted). "Injuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness [,] . . . minor discomfort[,] ... and two superficial scratches with a cut inside the mouth." *Lemmo v. McKoy*, 2011 WL 843974, at *5 (E.D.N.Y. 2011). While "the extent of the injury suffered . . . is one factor to be considered when determining whether the use of force was excessive, an injury need not be serious in order to give rise to a constitutional claim." *Ortiz v. Pearson*, 88 F.Supp.2d 151, 160 (S.D.N.Y. 2000). "While [a plaintiff] [may] not seek medical treatment for her injuries, and this fact may ultimately weigh against her in the minds of the jury in assessing whether the force used was excessive, the failure is not fatal to her claim. If the force used was unreasonable and

excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe." *Robison v. Via,* 821 F.2d 913, 924 (2d Cir. 1987).

Here, plaintiff admitted at his deposition that during his twenty days of incarceration, he did not make any complaints of any injury or pain to any medical personnel at the correctional facility. However, plaintiff testified that he experienced pain during his first night at the correctional facility. Plaintiff testified that he sought treatment the day after his release at Ellis Hospital for injuries to his hand/wrist. Plaintiff also treated three times with orthopedic specialists. Defendants contend that the certified medical records do not support plaintiff's timeline or treatment for the injuries allegedly sustained in the subject incident. Defendants also dispute the severity of plaintiff's alleged injury noting that records reflect a "contusion". Given this factual disputes and viewing the facts in the light most favorable to the plaintiff, the Court cannot say as a matter of law that plaintiff's alleged injuries are *de minimis*. *See Sash v. U.S.,* 674 F.Supp.2d 531, 539 -540 (S.D.N.Y. 2009) (although the plaintiff's immediate injuries turned out to be minor, the Court cannot find them *de minimis* as a matter of law).

Accordingly, defendants' motion for summary judgment and dismissal of plaintiff's excessive force claim and battery claim, on this issue, is denied.

### III.     Failure to Identify and Serve John Doe

In the alternative, defendants argue that all of plaintiff's claims against the "John Doe" defendant must be dismissed because plaintiff failed to timely and properly identify and serve the John Doe defendant.

"Using 'Doe' in place of specifically naming a defendant does not serve to sufficiently identify the defendant." *Coward v. Town and Vill. of Harrison,* 665 F.Supp.2d 281, 300 -302 (S.D.N.Y. 2009) (citation omitted). "Courts typically resist dismissing suits against John Doe

8

defendants 'until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials.'" *Id*. (citations and quotations omitted). "Where a plaintiff 'has had ample time to identify' a John Doe defendant, [. . . ] the plaintiff 'simply cannot continue to maintain a suit against' the John Doe defendant". *Id*. (citations omitted).

Here, it has been two and a half years since plaintiff commenced this action. In August 2010, plaintiff filed the complaint in state court. On June 5, 2012, plaintiff was deposed and positively identified only Officer Schonewald, by name. Plaintiff has failed to amend his complaint or serve any officer. Plaintiff submitted opposition to defendants' motion but did not explain why he has failed to serve the alleged responsible officer. Plaintiff simply states, "It has been made clear by the defendant's moving papers who actually caused my injury. As such, there is no prejudice to the defendant because the defendant has now been properly identified". Defendants disagree and argue that plaintiff misidentified the officers during his deposition. Indeed, defendants contend that Officer Haigh, not Officer Schonewald, directed plaintiff to leave the booking area. Regardless, plaintiff misunderstands his burden and the legal ramifications of his failure to identify and serve the proper defendant. Despite years of litigation, plaintiff does not explain why he did not amend his complaint to assert a claim against the officer allegedly responsible and further, why he failed to serve the officer once he was able to positively identify the proper defendant. *See Burns v. Trombly,* 624 F.Supp.2d 185, 197 -198 (N.D.N.Y. 2008) (collecting cases) (after two years of litigation, the *pro se* plaintiff failed to identify the John Doe defendants, thus, the plaintiff's claims against the John Doe defendants were dismissed without prejudice due to Plaintiff's failure to name or serve those defendants). All discovery is complete and thus, plaintiff's failure to identify the "John Doe" defendant mandates dismissal. *Keesh v. Artuz*, 2008 WL 3166654, at *2 (S.D.N.Y. 2008) (citing *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d

Cir. 1997)); *see also Jeanty v. County of Orange*, 379 F.Supp.2d 533, 536 n. 3 (S.D.N.Y.2005) (the plaintiff's request to amend the complaint after discovery was completed was denied as the plaintiffs were provided with ample time to attempt to identify the John Doe defendants).

**IV.    Failure to State a Claim**

Defendants also contend that plaintiff's 1983 claims against the City of Schenectady are subject to judgment as a matter of law because plaintiff failed to plead that the alleged deprivation of rights was the result of a municipal policy or custom. Moreover, even assuming plaintiff properly articulated a policy and further assuming that the incident amounted to excessive force, defendants claim that dismissal is nonetheless appropriate because a single incident of unconstitutional activity is not actionable. Plaintiff has failed to respond to this argument.

A municipal entity may be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see also Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). To state a Section 1983 claim against a municipality based on the actions of employees below the policymaking level, a plaintiff must plead "three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Southold,* 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriquez*, 702 F.2d 393, 397 (2d Cir. 1983)). Under *Monell,* to prevail against municipal defendants a plaintiff must demonstrate that the governmental entity had an unconstitutional or unlawful policy, and that the policy caused or was the moving force behind the violation of plaintiff's rights.

In this matter, plaintiff's § 1983 claims against the City of Schenectady fail as a matter of law because the complaint is completely devoid of any fact alleging that plaintiff was injured as a

result of the defendant's policy, custom or practice or actions of an employee with final policymaking authority. *Lawrence v. Town of Brookhaven Dep't of Housing, Community Development & Intergovernmental Affairs,* 2007 WL 4591845, at *19 (E.D.N.Y. 2007) (the plaintiff offered no explanation in her opposition papers for her failure to plead such required facts); *see also McGaw v. City of N.Y.,* 1993 WL 148959, at *3 (S.D.N.Y. 1993) (the municipal defendants were additionally entitled to summary judgment because the plaintiff has failed to plead the existence of any unconstitutional or unlawful policy, custom, or practice on the part of the City of New York or the Police Department as required for § 1983 liability under *Monell*). Thus, defendants' motion for summary judgment and dismissal of plaintiff's 1983 claims against the City of Schenectady is granted. *See Pooler v. Hempstead Police Dep't*, 2012 WL 4060743, at *4 (E.D.N.Y. 2012) (court awarded summary judgment in favor of County because the plaintiff made no allegations regarding a municipal policy, practice or custom in his complaint).

**V.      Negligence Cause of Action**

Defendants contend that plaintiff's negligence cause of action is subject to dismissal and summary judgment because it is duplicative of plaintiff's excessive force/battery claims. Defendants argue that plaintiff cannot assert that defendants' conduct was intentional and at the same time claim that it was negligent. Plaintiff has not responded to this argument.

"New York has adopted the view that, 'once intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently.'" *Morgan v. Nassau County,* 2009 WL 2882823, at *19 (E.D.N.Y. 2009) ("[s]ince plaintiff has alleged facts supporting a claim for assault and battery, he may not also base a claim of negligence on the same conduct"). If the plaintiff alleges intentional conduct in support of a claim for excessive force or battery, he may not also base a claim for

11

negligence on that same conduct. *Glowczenski v. Taser Int'l Inc.*, 2010 WL 1936200, at *7 (E.D.N.Y. 2010) (citation omitted) ("to the extent that the negligence claims are duplicative of the false arrest, excessive force, or battery counts, or are based on intentional conduct, they should not (and will not) go to the jury"). If allegations may be read as asserting negligence, as a basis for liability for constitutional torts, the assertions must fail because negligence cannot be a basis for liability for constitutional torts. *Rafter v. Bank of Am.,* 2009 WL 691929, at *10 (S.D.N.Y. 2009) (citing *inter alia Daniels v. Williams*, 474 U.S. 327 (1986)).

In plaintiff's Third Cause of Action, he alleges:

> The plaintiff restates every allegation contained in paragraphs "1" through "17".
>
> That on or about November 6, 2009 the plaintiff was caused to suffer personal injuries as a result of the negligence of the defendant, the City, its agents, servants and/or employees.

In the complaint, plaintiff describes defendants' conduct as, "forcibly yanking on plaintiff's handcuffs". Plaintiff also claims that defendants "yanked" and "shoved" plaintiff and that their actions were "willful and intentional". Plaintiff contends that defendants acted with the intent to violate his rights. Based upon plaintiff's own allegations, the claim of negligence cannot survive. Accordingly, on the facts currently before this Court, defendants' motion for summary judgment on plaintiff's negligence claim is granted.

**VI. Video Evidence**

In the alternative, assuming the court does not award summary judgment based upon the arguments above, defendants claim that a video recording captured the events that transpired at the police station on November 6, 2009 and that a review of the tape demonstrates that the incident that is the subject of this action did not occur. Defendants included a DVD copy of the video with the motion herein together with an affidavit from Ed Barbagelata, a lieutenant with the

City of Schenectady Police Department, attesting to its authenticity. Plaintiff does not specifically challenge the authenticity of the tape. Plaintiff states, "I am unable to view the video as I do not have the required video player" and therefore, he is "not aware [. . . ] whether this video has been altered or modified in any way".

The Court has attempted to review the DVD several times using several different means. The DVD is unreadable.[6] As the Court has already determined that defendants are entitled to summary judgment and dismissal of plaintiff's complaint, in its entirety, for the reasons set forth above, this issue is moot.

## CONCLUSION

**It is hereby**

**ORDERED** that defendants' motion for summary judgment and dismissal of plaintiff's excessive force and battery claims (Dkt. No. 19) based upon the argument that the force did not rise to the level of force necessary to constitute excessive force under the Fourth Amendment or battery under New York State Law is **DENIED;** it is further

**ORDERED** that defendants' motion for dismissal of plaintiff's claims against defendant "John Doe" (Dkt. No. 19) is **GRANTED** without prejudice; it is further

**ORDERED** that defendants' motion for summary judgment and dismissal of plaintiff's 1983 claims against the City of Schenectady (Dkt. No. 19) is **GRANTED**; it is further

**ORDERED** that defendants' motion for summary judgment and dismissal of plaintiff's negligence claim (Dkt. No. 19) is **GRANTED**, it is further

---

[6] On February 19, 2013, the Court contacted defense counsel to advise that the DVD was unreadable. Counsel did not resubmit any further DVD to the Court or to plaintiff.

**ORDERED** that defendants' motion for summary judgment and dismissal of plaintiff's complaint based upon video evidence (Dkt. No. 19) is **DENIED**.

The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated: February 27, 2013
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge